THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHAMPION ARMS, LLC,<br><br>　　　　　　　　Petitioner,<br><br>　　v.<br><br>JANET C. VAN HAELST,<br><br>　　　　　　　　Respondent. | CASE NO. C11–0804–JCC<br><br>ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PETITIONER'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Petitioner's motion for summary judgment (Dkt. No. 30), Respondent's cross motion for summary judgment (Dkt. No. 33), Petitioner's response (Dkt. No. 34), and Respondent's reply (Dkt. No. 35). In its petition, Champion Arms seeks *de novo* judicial review pursuant to 18 U.S.C. § 923(f)(3) of Respondent's decision to revoke its federal firearms license. Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS Respondent's summary judgment motion for the reasons explained herein. Petitioner's motion is therefore DENIED.

//
//
//
//
//

ORDER GRANTING RESPONDENT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING
PETITIONER'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 1

I.	BACKGROUND

    A.  Federal Firearms Laws

The Gun Control Act ("GCA") and its implementing regulations constitute a comprehensive system of strict regulations with which every firearms dealer and manufacturer must comply in order to do business. *See* 18 U.S.C. §§ 921 *et seq.*; 27 C.F.R. Part 478. This system exists so that the government can track the location of firearms and keep them out of the hands of individuals who are not legally allowed to possess such dangerous weapons. The system's basic contours involve detailed recordkeeping requirements, pursuant to which dealers must maintain complete and accurate records in the form of an Acquisition and Disposition book ("A&D book"), background check requirements, and detailed forms that must be completed for every transaction.

    The A&D book is, in essence, a credit/debit ledger for firearms that have either entered or left a dealer's premises. When a firearm comes in, whether from another licensee for the dealer to sell, or for repair from an individual, it must be recorded as an acquisition. Conversely, when a firearm leaves, it must be noted as a disposition, along with specific information regarding the transferee and firearm. When the acquisition and disposition entries do not match a dealer's current inventory, the ATF is able to determine which firearms have gone missing. If the system's purpose is to keep guns out of the wrong hands, unaccounted–for weapons are, of course, a major problem.

    Secondly, the GCA and its regulations require a dealer to complete a Form 4473 each time the dealer transfers a firearm. The transferee fills out a portion of the form, providing identifying information and details about his or her background. The dealer then completes the second portion of the form. When conducting a firearms transaction, a dealer must also run a background check, the response to which must be recorded on the Form 4473, along with additional information that the background check produces. Each of the detailed GCA provisions and ATF regulations are crucial to implementation of the GCA licensing system, and licensees

Case 2:11-cv-00804-JCC  Document 36  Filed 09/30/12  Page 3 of 20

are required to strictly comply with all applicable provisions and regulations. A failure to do so may result in either the denial of a license application or a revocation of a holder's license.

### B. Champion Arms' History

Petitioner Champion Arms is a federal firearms licensee located in Kent, Washington. It first obtained a federal firearms license in 1990, when it was owned and operated as a sole proprietorship by Steve Wangsness in Fife, Washington. (AR 25.) Mr. Wangsness had also obtained an earlier firearms license in 1984. (AR 25.) In 1997, Mr. Wangsness obtained a dealer's license, and later obtained a license to deal as a pawnbroker in 2006. (AR 3.) While Mr. Wangsness has operated Champion Arms under different licenses, he has continued to operate the business during the entire period, up to and including 2009.

The ATF inspected Champion Arms for the first time in 2002. In the course of that compliance inspection, numerous violations of the GCA and its regulations were discovered, and ATF issued a Report of Violations to Petitioner. (AR 22.) The violations included, among others, 172 instances in which Petitioner failed to record acquisitions in its A&D book; ninety-six instances in which it did not record dispositions in its A&D book; Petitioner's failure to record disposition dates in its A&D book for 769 repair firearms; six instances in which Petitioner failed to report multiple handgun sales; seventeen instances in which Petitioner failed to conduct the requisite NICS background check; Petitioner's failure to record on Form 4473 the date NICS was contacted; and Petitioner's failure to record transferee identification information on Form 4473. (AR 4, 22.) As a result of that inspection, ATF held a warning conference with Petitioner on November 14, 2002, during which ATF Inspector Kent Sanchez explained the regulations to Mr. Wangsness and alerted him to the fact that continued noncompliance could result in the loss of his license. (AR 31–32.) Mr. Wangsness acknowledged in a signed and dated document that the applicable regulations were reviewed with him and that his questions were answered. (AR 33.)

In 2002, before the next inspection occurred, Mr. Wangsness began operating Champion Arms as an LLC with Maria Sagisi–Geiss, though he did not so inform ATF. (AR 36.)

Thereafter, in 2005 and 2006, ATF conducted a recall inspection of Champion Arms. (AR 34–39.) This second inspection revealed both repeat violations from 2002 and new infractions. The violations included Petitioner's failure to notify ATF of a change in business structure; Petitioner's failure to record acquisition and disposition information in forty-eight instances; and Petitioner's failure to record on Forms 4473 the date that NICS was contacted to perform the required background check. (AR 4.) The latter two violations were repeat violations from 2002. ATF did not issue a formal report of violations, however, because Mr. Wangsness allowed the then–current license to expire. (AR 36.) Nonetheless, ATF held a second closing conference with Mr. Wangsness, in which ATF inspector Beverly French reviewed with him the pertinent firearms regulations and Champion Arms' infractions. (AR 38.) Shortly thereafter, Champion Arms applied for a new license as an LLC, which it received.

**C.  Champion Arms' 2009 Compliance Inspection**

In 2009, ATF inspected Champion Arms for the third time. (AR 287–91.) Mr. Wangsness and Ms. Sagisi–Geiss remained, as of 2009, the sole responsible individuals for Champion Arms LLC. (AR 3.) In the course of this third inspection, ATF officials again discovered numerous violations. On April 23, 2009, ATF issued a Report of Violations to Champion Arms, which Mr. Wangsness, Ms. Sagisi–Geiss, and store manager Scott Sipe signed. (AR 291.) Subsequently, ATF issued a Notice of Revocation of License to Champion Arms on March 4, 2010. (AR 2.) The proposed revocation was based on eleven alleged violations, ten of which ATF now relies upon. In summary, those violations include the following:

    1.    Champion Arms' failure to make accurate and timely entries in its A&D record, including seven instances relating to missing acquisition entries for firearms in inventory and two instances relating to missing acquisition information for firearms taken in for repair; 123 instances in which Petitioner failed to record any disposition information for firearms that could not be located in inventory but were ultimately accounted for; and fifty-eight instances in which Petitioner failed to record disposition information for firearms that could not be located or accounted for;

2. Champion Arms' transfer of a handgun to a person it knew or had reasonable cause to believe did not reside in Washington State;

3. Champion Arms' transfer of firearms to individuals it had reasonable cause to believe were prohibited persons;

4. Champion Arms' failure to conduct the required NICS background checks in four instances;

5. Champion Arms' failure to completely and accurately record background check information on Forms 4473 in fifty-three instances;

6. Champion Arms' failure to complete Form 3310.4, Report of Multiple Sale or Other Disposition of Pistols or Revolvers in five instances;

7. Champion Arms' failure to ensure that transferees certified Form 4473 with a signature and date in five instances;

8. Champion Arms' failure to ensure that Form 4473 was properly completed by transferee in twenty-seven instances;

9. Champion Arms' failure to properly record transferee identification information on Form 4473 in fifteen instances; and

10. Champion Arms' failure to record the date of transfer of firearms on Form 4473 in thirteen instances, and failure to record the correct date of transfer in three instances.

(AR 5–8.)

In response to the notice of revocation, Champion Arms timely requested and was granted a hearing to contest the revocation in accordance with 18 U.S.C. § 923(f)(2) and 27 C.F.R. § 478.74. (AR 11, 573–80.) Following the hearing on September 16, 2010, the Hearing Officer found that nine of the eleven violations were committed willfully, and recommended revocation of Champion Arms' license. (AR 574–78.) On March 9, 2011, ATF issued a Final Notice of Denial of Application or Revocation of Firearms License to Champion Arms. (AR 582–670.) Petitioner subsequently filed this petition for de novo judicial review.1 (Dkt. No. 1.)

---

[1] Respondent Janet C. Van Haelst is the Director of Industry Operations for the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). For the sake of convenience, the Court refers to Respondent as ATF.

## II. DISCUSSION

### A. Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In making such a determination, the Court must view the facts and inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

Petitioner challenges the ATF's Final Notice of Revocation pursuant to 18 U.S.C. § 923(f), which authorizes this Court to conduct a *de novo* review of the revocation. *See* 18 U.S.C. § 923(f)(3); *Perri v. Dep't of the Treasury*, 637 F.2d 1332, 1335 (9th Cir. 1981). In conducting this review, the district court may consider any evidence submitted by the parties, regardless of whether that evidence was considered in the revocation hearing, but is not required to hold a new trial or evidentiary hearing if no genuine dispute of material fact exists. 18 U.S.C. § 923(f)(3); *Perri*, 637 F.2d at 1335. Further, the Court is authorized to grant summary judgment based on the administrative record "when no substantial reason to receive additional evidence is present"; in other words, summary judgment is appropriate when "the material facts developed at the administrative hearing . . . are not substantially drawn into question" by the petitioner. *Cucchiara v. Sec'y of the Treasury*, 652 F.2d 28, 30 n.1 (9th Cir. 1981), *cert. denied* 455 U.S. 948 (1982). Here, the Petitioner submitted only one additional exhibit in support of its motion. (*See* Dkt. No. 32.) Respondent submitted no additional exhibits. Because the parties agree that there are no

genuine disputes of material fact and the Court has before it the certified, uncontradicted administrative record, resolution of the parties' cross–motions for summary judgment is appropriate.

### B. License Revocation Under the Gun Control Act

Under 18 U.S.C. § 923, this Court must determine whether ATF was "authorized" to revoke Petitioner's federal firearms license. The Gun Control Act provides that the Attorney General may, after notice and opportunity for a hearing, revoke a federal firearms license if the licensee has willfully violated any GCA provision or regulation promulgated thereunder.[2] 18 U.S.C. § 923(e). Accordingly, a single willful violation of the GCA is sufficient to uphold the revocation. *General Store, Inc. v. Van Loan*, 560 F.3d 920, 924 (9th Cir. 2009); *Am. Arms Int'l, v. Hubert*, 563 F.3d 78, 86 (4th Cir. 2009); *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 464 (6th Cir. 2004).

#### 1. Willfulness Under the GCA

As stated above, ATF must establish that a licensee's violations of the GCA were willful in order to revoke its federal firearms license. The Ninth Circuit has explained on multiple occasions that a violation is willful "when a dealer understands the requirements of the law, but knowingly fails to follow them or was indifferent to them." *General Store*, 560 F.3d at 923 (quoting *Perri*, 637 F.2d at 1336); *Cucchiara*, 652 F.2d at 30. In this context, "indifference" means "plain indifference," which is no different than recklessness. *General Store*, 560 F.3d at 923. Establishing willfulness does not require a showing of "purposeful, intentional conduct," but the Ninth Circuit has made clear that "mere mistake or negligence" is insufficient to support a revocation. *Id.* at 923–24. The seven other courts of appeals to address the standard agree that demonstrating a licensee's plain indifference to a known legal obligation or the general

---

[2] The Attorney General has delegated responsibility to enforce the GCA and accompanying regulations to the ATF. *See* 27 C.F.R. § 0.130(a)(1). Under that authority, Director Van Haelst is authorized to issue a final notice of revocation for any willful violation of the GCA.

ORDER GRANTING RESPONDENT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING
PETITIONER'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 7

unlawfulness of the actions suffices to show willfulness. *Accord Borchardt Rifle Corp. v. Cook*, 684 F.3d 1037, 1042–43 (10th Cir. 2012); *Athens Pawn Shop, Inc. v. Bennett*, 364 Fed. App'x 58, 59 (5th Cir. 2010) (unpublished); *Armalite, Inc. v. Lambert*, 544 F.3d 644, 648 (6th Cir. 2008); *RSM, Inc. v. Hebert*, 466 F.3d 316, 321–22 (4th Cir. 2006); *Article II Gun Shop, Inc. v. Gonzales*, 441 F.3d 492, 497 (7th Cir. 2006); *Willingham Sports, Inc. v. ATF*, 415 F.3d 1274, 1277 (11th Cir. 2005); *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979).

Plain indifference may be demonstrated in multiple ways. The most oft–relied upon method is the "repeat violation" theory. In such cases, a licensee's knowledge of the GCA's requirements or the general unlawfulness of its actions, in conjunction with its repeated violations, permit a court to infer that the licensee was plainly indifferent and thus acted willfully. *See*, *e.g.*, *Borchardt*, 684 F.3d at 1043 ("We join our sister circuits and hold that after a dealer has been informed of the Gun Control Act Requirements and warned of violations, a dealer's subsequent repeat violations suffice to show plain indifference to the statutory requirements."). To demonstrate willfulness, however, "a repeated violation is not required, so long as ATF can prove willfulness in some other way. 'Plain indifference can be found even where nine times out of ten a licensee acts in accordance with the regulations, if he was plainly indifferent to the one–in–ten violation.'" *Borgelt v. ATF*, 2009 U.S. Dist. LEXIS 89281, at *11 (W.D. Wash. Sept. 24, 2009) (quoting *Am. Arms Int'l v. Herbert*, 563 F.3d 78, 87 (4th Cir. 2009)).

Ignoring the vast expanse of case law directly addressing this standard and its application, Petitioner argues that willfulness requires evidence of the licensee's state of mind at the very time of the violation, since "the actor's state of mind years earlier is not probative." (Dkt. Nos. 30 at 3; 34 at 6.) This Court disagrees. First, a licensee's prior knowledge of the legal requirements under the GCA is *extremely* probative to the determination of whether the licensee was plainly indifferent to *a known legal requirement* at a later point in time. If accepted, Petitioner's theory would undermine an entire body of well–established GCA case law that

permits an inference of willfulness based on a licensee's plain indifference to known legal requirements.[3] *See General Store*, 560 F.3d at 923.

Second, Petitioner cites no GCA–related case law or other persuasive authority to support its position. Yet, this exact argument has been squarely rejected by multiple courts, the reasoning of which this Court finds persuasive. For example, the Tenth Circuit recently rejected this argument when the appellant–petitioner asserted that "the district court erred because . . . [it] considered [the licensee's] previous violations as evidence of the recklessness and did not focus solely on the evidence of [the licensee's] state of mind at the time the violations were committed." *Borchardt*, 684 F.3d at 1043–44. The district court held previously that it was "unnecessary to require [ATF] to present direct evidence that Story possessed a reckless state of mind at the time he violated the Gun Control Act, as [Petitioner] requests, because the plain language of the Gun Control Act and the case law addressing 18 U.S.C. § 923 does not support such a requirement." *Borchardt*, 727 F. Supp. 2d at 1164–65. The Tenth Circuit agreed, and construed the licensee's argument to raise nothing more than the questions of (1) whether plain indifference suffices to demonstrate willfulness and (2) whether circumstantial evidence may support this finding. *Borchardt*, 684 F.3d at 1043–44. The court proceeded to accept the well–established plain indifference standard of willfulness and held that evidence of a licensee's prior, repeat violations may be considered. *Id.*; *see also Gladden v. Bangs*, 2010 U.S. Dist. LEXIS 23304, at *16 (E.D. Va. Feb. 23, 2012) ("Petitioner's contention that previous acts do not establish willfulness is patently false."). Because this Court also fails to see any reason to depart from the existing interpretation, it declines to adopt Petitioner's application of the willfulness

---

[3] Petitioner concedes in its response that circumstantial evidence may be used to demonstrate willfulness, but maintains that the evidence must focus solely on the licensee's state of mind at the time of the violation. This argument misconstrues the fundamental nature of circumstantial evidence and the plain indifference standard, which necessarily looks at a licensee's prior knowledge of the law to determine whether he or she acted with plain indifference. Notwithstanding Petitioner's rephrasing of its argument, this Court construes the continued insistence for evidence of the licensee's state of mind at the time of the violation to be one asserting that direct evidence is necessary and that prior knowledge is irrelevant. For the reasons stated above, this argument is not persuasive.

standard under the GCA, and instead proceeds under well–established law.

### 2. Corporate Identify Under the GCA

Before addressing the violations that supported ATF's revocation, the Court pauses briefly to address Petitioner's second argument that Champion Arms' prior violations cannot serve as the basis for (1) demonstrating its knowledge of the GCA's legal requirements or (2) finding that it repeatedly violated the GCA. Essentially, Petitioner urges this Court to hold that its prior GCA violations and interactions with the ATF are irrelevant to the current revocation because Champion Arms' legal structure has changed from that of a sole proprietorship (Mr. Wangsness doing business as Champion Arms) to a limited liability company (with Mr. Wangsness and Ms. Sagisi–Geiss as the President and CEO of Champion Arms, respectively) between the 2002 inspection and the 2005/6 and 2009 inspections. Petitioner also makes much of the fact that Mr. Wangsness operated Champion Arms under a different firearms license when inspected in 2002 and 2005/6, which he allowed to expire before obtaining a new license prior to the 2009 inspection. ATF disagrees, arguing that Champion Arms has been a continuous operation since Mr. Wangsness first obtained a federal license in 1990 "doing business as" Champion Arms. Essentially, ATF argues that Champion Arms' prior violations, review conferences, and other interactions with ATF demonstrate that both Mr. Wangsness and Ms. Sagisi–Geiss knew of the GCA's legal requirements and continued to violate them, thus demonstrating Champion Arms' plain indifference, notwithstanding the technical change of Champion Arms' corporate structure or the fact that Petitioner operated under difference licenses at different points in time.

This Court agrees with ATF on this point. First, Petitioner has directed this Court to no authority that precludes a finding of willfulness based on knowledge that a licensee obtained while holding a prior license or before the licensee's corporate structure changed. Nor has Petitioner persuasively highlighted any provision of the GCA that would require as much. Second, as ATF has pointed out, abundant authority *permits* the ATF to look beyond a licensee's

corporate structure to determine whether a willful violation has been committed.[4] *See*, *e.g.*, *Barany v. Van Haelst*, 2011 U.S. App. LEXIS 21693, at *2 (9th Cir. Oct. 25, 2011) (affirming denial of license based on willful violations of corporate licensee when individual, a former corporate officer, applied for a separate license); *Gladden*, 2012 U.S. Dist. LEXIS 23304, at *15 (noting that "[o]f the multiple violations cited, Petitioner had been advised of *nine similar violations* under a previous license.") (emphasis in original); *Trader Vic's Ltd. v. O'Neill*, 169 F. Supp. 2d 957, 960 (N.D. Ind. 2001) (affirming denial of license where applicant, an individual, had been principal of company cited for violations).

Specifically noteworthy, however, are two cases in which an analogous scenario has unfolded. In the first, *American Arms, Int'l v. Herbert*, 563 F.3d 78 (4th Cir. 2009), the Fourth Circuit affirmed the revocation of American Arms' license, finding that the corporate licensee willfully violated the GCA's recordkeeping requirements based on the prior violations of its owner, Charles Gilbert. *Id.* at 86–89. The court simultaneously upheld the decision to deny a license to another of Gilbert's companies, Gilbert Indoor Range, based on Gilbert's individual record of noncompliance. *See id.* at 79. In revoking and denying the licenses of the corporate entities, the court explained that "Gilbert had already been warned about this specific kind of violation in the past[,] not to mention the fact that ATF inspectors had held an individual review of the regulations with him at least twice." *Id.* at 87. This Court fails to see any reason why the Fourth Circuit's approach, in which it looked to the responsible person's noncompliance history rather than only that of the corporate licensee as it currently existed, is not the proper approach in

---

[4] The Court is not persuaded by Petitioner's attempt to distinguish the cases that ATF has cited. Petitioner asserts that "[t]here is in fact no law establishing that the unlawful acts of a corporate owner before he was involved with the corporate entity may be attributed to the corporate entity merely because he is an owner of the corporate entity." (Dkt. No. 34 at 16.) First, Petitioner fails to take note of the two cases discussed in this section, *American Arms* and *Borchardt Rifle*. In each of these cases, this is just what happened, making Petitioner's contention false. Second, the argument misses the point at hand: This Court is not attributing prior violations of Mr. Wangsness to Champion Arms "merely" because Mr. Wangsness is *now* "an" owner of Champion Arms. Instead, the Court considers Mr. Wangsness' and Ms. Sagisi-Geiss' history of noncompliance–during which they *continuously operated Champion Arms as a business*–to find that as the responsible persons for Champion Arms, they had knowledge of the regulations and were plainly indifferent to them.

ORDER GRANTING RESPONDENT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING
PETITIONER'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 11

this situation. *Cf. Willingham Sports*, 415 F.3d at 1277–78 (affirming revocation of corporate entity's license where individual owner testified that he understood legal obligations based on prior noncompliance and warning conferences ATF held with him and inspection of the business uncovered repeat violations).

The second case is *Borchardt Rifle Corp. v. Cook.*, 727 F. Supp. 2d 1037 (D.N.M. 2010), *aff'd* 684 F.3d 1037 (10th Cir. 2012). There, the district court held that the GCA violations of a corporate licensee, Borchardt Rifle Corporation, were willful because its sole corporate officer, Mr. Story, had been a firearms dealer and manufacturer for 15 years, and had been inspected and cited for violations while operating as a sole–proprietor under a different federal firearms license. *Id.* at 1170–71. Indeed, the court noted in its factual background that "[a]t the time of the violations . . ., Albert Story, acting individually or as a corporate officer, had been continuously licensed by the ATF." *Id.* at 1148. Notwithstanding the technical distinction, the court found that "[t]he undisputed evidence," which included prior violations by Mr. Story, warning conferences, and his acknowledgment of the need to comply with the law going forward, "conclusively establishes that Borchardt Rifle was aware of the regulations imposed on it and yet, despite that knowledge, [] continued to violate those same regulations." *Id.* at 1171. The Tenth Circuit affirmed the district court's holding that the corporate licensee was plainly indifferent based on Mr. Story's repeat violations. *Borchardt*, 684 F.3d at 1044.

Here, the story is the same. At all times relevant to this revocation, either Mr. Wangsness or Mr. Wangsness and Ms. Sagisi–Geiss continuously operated Champion Arms. Champion Arms was inspected multiple times and has been cited for both repeat and new violations. ATF has held multiple warning conferences with Mr. Wangsness (operating as Champion Arms in one form or another) in which its violations and the applicable regulations were reviewed, and Mr. Wangsness acknowledged the violations and promised to remedy them. In light of the authority discussed above, the Court finds that neither Champion Arms' change of corporate structure nor its acquisition of a new firearms license preclude the Court from considering Petitioner's lengthy

history of noncompliance.

Accordingly, the Court proceeds to analyze the violations in the revocation notice to determine whether ATF was authorized to revoke Champion Arms' license.

### C. Champion Arms' Alleged Violations

In its Final Notice of Revocation, ATF found eleven separate violations, ten of which it relies upon to support the instant revocation. Of those ten violations, six are repeat violations. (*See* AR 5–9.) Because only a single willful violation is required for ATF to revoke a federal firearms license, and the Court "need not scour each charge in the ATF's revocation notice," *Armalite*, 544 F.3d at 560, the Court first analyzes numerous of the repeat violations to determine whether Champion Arms was plainly indifferent to its known legal obligations.[5] Because the Court finds that multiple of Champion Arms' repeat violations provide a basis for the revocation, it refrains from analyzing every single count in the revocation notice.

As stated above, a licensee's violations are "willful" if the licensee understood the requirements of the law, but was plainly indifferent to them. *General Store*, 560 F.3d at 923. Based on the record, it is clear to the Court that Petitioner was aware of and understood the requirements of the GCA, yet through its repeated violations, was plainly indifferent to the law's requirements. The Court first addresses Champion Arms' knowledge of its obligations, and then analyzes multiple of its violations to determine whether Petitioner was plainly indifferent.

*Champion Arms' Knowledge.* First, the administrative record makes clear, and Petitioner does not dispute, that Mr. Wangsness has held multiple federal firearms licenses for Champion Arms in the past. He obtained one in 1990 (doing business as Champion Arms), one in 1997, and another in 2006 while operating Champion Arms as an LLC with Ms. Sagisi–Geiss. (AR 25, 584–88.) ATF twice inspected Champion Arms before the instant compliance inspection, finding

---

[5] Additionally, Petitioner has challenged certain regulations as being void. Because the Court finds that Petitioner willfully violated other GCA provisions and ATF regulations that Petitioner does not contend are void, the Court declines to address Petitioner's voidness arguments. *See Borchardt*, 727 F. Supp. 2d at 1171 (declining to reach issue of whether regulations were void because issue was moot in light of other willful violations).

ORDER GRANTING RESPONDENT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING
PETITIONER'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 13

numerous violations in both instances. (AR 22, 34–39.) Further, Mr. Wangsness has attended multiple warning conferences in which Champion Arms' violations and the GCA regulatory requirements were explained to him. He has, on more than one occasion, acknowledged Champion Arms' violations and promised compliance. (AR 33, 46–47.) Additionally, Ms. Sagisi–Geiss began operating Champion Arms as an LLC with Mr. Wangsness in 2002, and was similarly subject to ATF's second inspection of Champion Arms. (AR 34–39.) Champion Arms has repeatedly been warned that if it continued to violate the GCA, its federal firearms license could be revoked. Such an extensive record makes it clear to this Court that Petitioner was aware of its responsibilities as a federal firearms licensee, *especially* with regard to the repeat violations. *See*, *e.g.*, *Am. Arms Int'l*, 563 F.3d at 87 ("The string of prior citations, warning letters, and regulatory review sessions were clearly not enough to bring Gilbert into compliance. We have no trouble finding in these circumstances that Gilbert's violations of the GCA were willful.").

*Plain Indifference*. Champion Arms' repeat violations demonstrate its plain indifference to the legal requirements of the GCA, especially in light of the repeated warnings from the ATF that continued violations would result in revocation. Specific instances of repeat violations are discussed below.

      1.   **Count I**

Count I alleges that Petitioner willfully violated 18 U.S.C. §§ 922(m), 923(g)(1)(A) and 27 C.F.R. § 478.125(e) by failing to make accurate and timely entries in its A&D record. Specifically, ATF investigators found that Petitioner failed to record complete acquisition information in seven instances; failed to record complete acquisition information for firearms taken in for repair in two instances; failed to record any disposition information for firearms that could not be located in inventory but which had corresponding documentation reflecting that the firearms had been transferred in 123 instances; and failed to record any disposition information for firearms that could not be located in inventory or have their disposition otherwise accounted

for in fifty-eight instances. (AR 5–6.)

Petitioner does not dispute that it did not maintain its A&D record as required under the GCA, nor does it dispute that in both 2002 and 2005/6, it similarly failed to maintain its A&D records. (*See* AR 26, 35–39.) Instead, Champion Arms argues that no evidence was presented to show that its failures were made "intentionally, or even recklessly." (Dkt. No. 30, at 4–5.) As discussed above, however, the Ninth Circuit has rejected the contention that the licensee's actions must be "intentional." *See General Store*, 560 F.3d at 923–24. As ATF correctly argues, Petitioner's plain indifference, as demonstrated by its repeat violations in light of its known legal obligations, suffices to show willfulness. The record is clear that Champion Arms was cited in 2002 for failure to accurately and timely maintain its A&D book and that the relevant regulations were reviewed with Mr. Wangsness. (AR 26, 31). At that review conference, Mr. Wangsness acknowledged his noncompliance, said he was "sorry," and stated that during the next inspection, things would be "perfect." *Id.* This scenario repeated itself in 2006, including the warning conference between ATF and Mr. Wangsness on behalf of Champion Arms. (AR 38.) Indeed, Mr. Wangsness acknowledged Champions Arms' violation and affirmed that the regulations were explained to him. *Id.* Little changed, however, and Champion Arms has again failed to maintain its A&D book as required. Petitioner's continued disregard of the applicable law, despite numerous inspections and warning conferences and in light of Mr. Wangsness' history as a firearms licensee, constitute at a minimum plain indifference. *Accord General Store*, 560 F.3d at 924–25 (affirming finding of willfulness where licensee had twice been cited for violating the same A&D recordkeeping requirements and been subject to warning conferences before the final inspection and revocation); *Willingham Sports*, 415 F.3d at 1277–78 (affirming revocation determination based on repeat recordkeeping violations where licensee had been licensed for fourteen years, was aware of recordkeeping requirements, had been cited for recordkeeping violations four times, and had received warnings that continued noncompliance would result in revocation); *Am. Arms Int'l*, 563 F.3d at 79 (affirming revocation where store

owner had previously been warned about A&D violations in prior inspections).

Contrary to Petitioner's assertion that these extensive violations were not willful because they were due to "oversight," the fact that they were due to carelessness in light of Petitioner's past infractions and warnings for the same violations *strengthens* the conclusion that Petitioner was plainly indifferent to its known legal obligations. *See Borchardt*, 684 F.3d at 1043–44 (affirming district court's willfulness finding where licensee argued that violations were "oversights," in part because his "continued carelessness, in the face of [his] acknowledged prior violations and his understanding of the Gun Control Act requirements, amounts to plain indifference[.]"); *Gladden*, 2012 U.S. Dist. LEXIS 23304, at *6 ("a firearms licensee's repeated violations after it has been informed of the regulations and warned of violations does show purposeful disregard or plain indifference for purposes of determining whether such violations were willful.").[6] Because it does not dispute the factual basis for the violations, Champion Arms' repeat recordkeeping violations, despite clear knowledge of its legal obligations, suffice to demonstrate willfulness. Accordingly, ATF was authorized to revoke Petitioner's license.

### 2. Count V

In Count V, Respondent found that Petitioner willfully violated 27 C.F.R. § 478.124 (c)(3)(iv), because in nineteen instances, Champion Arms "failed to accurately record the date on which NICS was contacted"; in six instances, it "failed to record the transaction numbers provided by NICS"; in two instances, it "failed to record the response provided by NICS"; and in twenty-six instances, Petitioner "failed to record the response provided by NICS following an initial 'delay' response." (AR 596.)

---

[6] The Court notes that Petitioner argues that it did not violate the GCA with respect to the fifty-eight dispositions for which the firearms remained unaccounted. Essentially, Petitioner states that such a loss or suspected theft should not constitute a "disposition" under the GCA, since only "affirmative" dispositions are contemplated. The Court need not address this argument, given that Petitioner does not dispute that it violated the regulations with regard to the other three categories of A&D record violations. Nonetheless, upon consideration of the issue, the Court finds persuasive the *Borgelt* court's decision, in which Judge Martinez held that "dispositions" include passive losses, such as suspected theft, since the statute must be read in light of its purpose. *Borgelt*, 2009 U.S. Dist. LEXIS 89281, at *21-22.

ORDER GRANTING RESPONDENT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING
PETITIONER'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 16

Champion Arms does not dispute that it failed to correctly complete the Forms 4473 in the above instances. Instead, it renews its earlier arguments, primarily that such violations were not willful. However, this Court is satisfied that such actions were willful under the plain indifference standard. Champion Arms was cited in 2002 for failure to record required information in the same section of Form 4473. (AR 3.) Specifically, as Petitioner's concede, it was cited for failure to record the date on the Forms 4473. (Dkt. No. 30 at 14.) After those violations were found, the ATF reviewed the regulations involving Form 4473 with Petitioner, and Mr. Wangsness acknowledged the need to comply by appropriately completing Form 4473 for each transaction. (AR 33.) In 2006, Petitioner again failed to accurately or completely fill out the 4473 Forms. (AR 36–37.) And again, ATF reviewed the applicable regulations with Petitioner and warned him that a failure to comply going forward could result in the loss of his license. (AR 38.) In 2009, Champion Arms was found for a third time to be in violation of this GCA regulation, as it had not only failed to record the appropriate date, but failed to record additional required information regarding the NICS background check. (AR 7.)

Petitioner argues that only its failure to accurately record the "date" on Form 4473 was a repeat violation. (Dkt. No. 33 at 28–29.) The Court disagrees. While the other violations in Count V were not failures to record the "date," they were violations of 27 C.F.R. § 478.124 (c)(3)(iv) for failure to accurately and completely fill out NICS information on Form 4473 for each transaction. Indeed, each of the violations involved information in the same section of the form, Section 21. This conclusion is strengthened by the fact that the regulations involving Form 4473 were twice reviewed with Petitioner prior to the 2009 violations. In any event, Champion Arms does not dispute that even taking the narrowest view, the failure to record the date on Form 4473 in nineteen instances was a repeat violation. In light of this compliance record, the Court finds that Petitioner knew of its legal obligations to accurately and completely fill out Form 4473, and failed to do so on repeated occasions. Champion Arms' violation was therefore willful, and ATF was authorized to revoke its license on this basis.

ORDER GRANTING RESPONDENT'S MOTION
FOR SUMMARY JUDGMENT AND DENYING
PETITIONER'S MOTION FOR SUMMARY
JUDGMENT
PAGE - 17

Further, the Court finds that these violations were willful even if not considered to be repeat violations. Indeed, a repeat violation is not necessarily required to demonstrate plain indifference if other evidence of willfulness is available. *See Borgelt*, 2009 U.S. Dist. LEXIS 89281, at *11. The *Borgelt* case is particularly instructive in this circumstance. There, the licensee failed to complete the portion of Form 4473 regarding NICS background checks, just as Champion Arms failed to do in 2009. *Id.* at 19. In finding that the licensee's violations were willful, the Court explained that "[m]ore importantly" than the fact that it was a repeat violation, "the violations themselves are evidence of willfulness." *Id.* at 19. The reason, the Court explained, was that "every portion of the forms is filled out except the section regarding background checks, evidencing a conscious decision to leave the NICS information blank." *Id.* Here, Champion Arms similarly completed Forms 4473 but omitted specific NICS information, evincing a conscious decision to omit required information on the forms. Accordingly, the Court finds that Petitioner's violations were willful and the revocation of its firearms license was authorized on this basis.

### 3. Count VI

ATF also determined that Champion Arms willfully violated 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. § 478.126(a) when it failed to complete ATF Form 3310.4, Report of Multiple Sale or Other Disposition of Pistols or Revolvers in five instances. (AR 7, 597, 606.) Under these provisions, licensed firearms dealers are required to complete Form 3310.4 when he or she sells or otherwise disposes of two or more pistols or revolvers to an unlicensed person at one time or during any five consecutive business days. 18 U.S.C. § 923(g)(3)(A); 27 C.F.R. § 478.126(a).

Again, Champion Arms does not dispute that it violated these provisions by failing to complete Form 3310.4 in the five cited violations. Instead, it renews its argument that this was not a "repeat" violation, since Mr. Wangsness held a different license in 2002 when Champion Arms was previously cited for the same violation. (Dkt. No. 30, at 15.) Petitioner further argues ATF offered no evidence of its state of mind at the time of the violation. *Id.* Because the Court

has already rejected these exact arguments with regard to other repeat violations, they are similarly unavailing with regard to Count VI. The record demonstrates that in 2002, Champion Arms was cited for the same violation in six instances. (AR 26.) Mr. Wangsness acknowledged this violation, the regulation was explained to him, and he promised compliance. (AR 31, 33.) Based on the foregoing, the Court finds that Champion Arms knew of its legal obligation to complete Form 3310.4 for any sale of multiple handguns to an unlicensed purchaser either at the same time or within a five–day period. By repeatedly violating this requirement, Champion Arms was plainly indifferent to its known legal obligation. The Court thus finds that ATF was authorized to revoke Petitioner's license on this basis.

### 4. Count X–A

In Count X–A, ATF alleged that in fourteen instances, Champion Arms failed to record on Form 4473 the type of identification the transferee provided, as required by 18 U.S.C. §§ 922(m), 923(g)(1)(A), and 27 C.F.R. § 478.124(c)(3)(i). (AR 8, 601–602.) With respect to these violations, Petitioner's argument is twofold. First, it asserts that only seven instances violate the regulation rather than fourteen. Second, Petitioner again argues that ATF offered no evidence that it acted "intentionally or recklessly." (Dkt. No. 30, at 26.) As to the first contention, the Court recognizes Petitioner's argument that 27 C.F.R. § 478.124(c)(3)(i) requires that the "type" of identification be used, but also notes that Form 4473, which Petitioner is required by law to complete, requires additional information such as the license number and the date of expiration. In any event, the Court need not determine the validity or breadth of the regulation at issue, as Petitioner concedes that at least seven of its omissions violated 27 C.F.R. 478.124(c)(3)(i). Thus, the Court is satisfied that Petitioner knew of its obligations based on its prior violations and review conferences, yet was plainly indifferent to the regulatory requirements by continuing to violate the same provisions. As to Petitioner's second argument, the Court has already addressed Petitioner's attempt to advance a new theory of willfulness. Petitioner's plain indifference to its known legal obligation, which the record demonstrates, suffices.

Because the Court is satisfied that ATF's revocation decision was authorized on multiple grounds given Petitioner's willful violations of the GCA, it declines to further scour the violations in the revocation notice. Petitioner's legal objections to the willfulness standard and use of repeat violations to demonstrate plain indifference have been rejected, and Petitioner has conceded more than one violation on a record that reflects willfulness. Accordingly, the Court concludes that ATF was authorized to revoke Champion Arms' federal firearms license.

### III. CONCLUSION

For the foregoing reasons, Respondent's motion for summary judgment (Dkt. No. 33) is GRANTED. Petitioner's motion for summary judgment (Dkt. No. 30) is, in turn, DENIED.

DATED this 30th day of September 2012.

John C. Coughenour
UNITED STATES DISTRICT JUDGE